**Nelson CASTANO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. 93 Civ. 2732 (JES), 89 Cr. 0440 (JES).

United States District Court, S.D. New York.

March 30, 1995.

Nelson Castano, Fort Dix, NJ, pro se.

Mary Jo White, U.S. Atty. for So. Dist. of N.Y., New York City (John M. Desmarais, Asst. U.S. Atty., of counsel), for respondent.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2255, *pro se* petitioner Nelson Castano brings the instant petition to vacate and correct his sentence. In his petition, Castano argues that the Court misapplied the United States Sentencing Guidelines ("U.S.S.G. or the "Guidelines"). For the reasons that follow, the petition is denied.

## BACKGROUND

At all times pertinent to this action, Luis Hernandez operated as a confidential infor-mant for the Drug Enforcement Administration ("DEA"). On May 26, 1989, Hernandez and Ramon Padilla met unexpectedly on the corner of 138th Street and St. Ann's Avenue in the Bronx. Trial Transcript ("Tr.") 75–77. During the course of the meeting, Padilla indicated that his connection could supply Hernandez with two kilograms of cocaine. *Id.* Shortly thereafter, Hernandez, Padilla and another individual, known as Ralphie, proceeded to a grocery store located at 214 St. Ann's Avenue. *Id.* at 77–79.

At the grocery store, Hernandez was introduced to Basilio Vasquez and Rodrigo Vasquez. Tr. 79. While Rodrigo Vasquez tended to other matters, Basilio Vasquez, Hernandez, Padilla and Ralphie proceeded to the back of the store. *Id.* at 81. In the back, Ralphie explained to Basilio Vasquez that Hernandez wanted to purchase two kilograms of cocaine. *Id.* at 81–83. Basilio Vasquez then informed Hernandez that the two kilograms of cocaine would cost $32,000 and that a few hours would be necessary to execute the deal. *Id.* at 83.

Hernandez returned to the grocery store a short time later. Tr. 84. At the store, Basilio Vasquez, Rodrigo Vasquez, Padilla and Ralphie were present, but the cocaine had not yet arrived. *Id.* Shortly thereafter, the supplier connection telephoned the store and assured Hernandez that the deal would occur as quickly as possible. *Id.* at 87–88. Then, at approximately 6:00 p.m., Castano and Raul Morales entered the store, with Castano carrying a shopping bag containing two packages. *Id.* at 89–91. After greeting Rodrigo Vasquez, Castano and Morales proceeded to the back of the store with Basilio Vasquez. *Id.* at 89–90. In the back of the store, Hernandez was shown the two packages, one of which he inspected and identified as cocaine. *Id.* at 92. At that point, Basilio Vasquez advised Hernandez that the initial transaction would involve only one package. *Id.* Basilio Vasquez further advised Hernandez that if the initial deal were successful, they would return to the grocery store and deal with the second package. *Id.*

Hernandez, Castano, and Morales then took one of the packages and departed for 97th Street and Riverside Drive in Manhat-

tan. Tr. 94–96. Castano drove the automobile, and Morales sat on the passenger side with the package of cocaine on the seat. *Id.* at 96. During the drive to Manhattan, Castano and Morales spoke and indicated that if the deal were successful, Hernandez could purchase more cocaine from them. *Id.* at 159. When the three men arrived at 97th Street, the DEA arrested Castano and Morales with the one package of cocaine. *Id.* at 99. At approximately 7:00 p.m., the DEA arrested Basilio Vasquez, Rodrigo Vasquez and Ramon Padilla in the grocery store, but Ralphie eluded arrest. *Id.* at 199–200, 209. The DEA never recovered the second package of cocaine. *Id.* at 223.

On October 5, 1989, Nelson Castano was convicted of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. On December 19, 1989, the Court sentenced Castano to a term of imprisonment of 82 months, a term of supervised release of four years, and $100 in mandatory special assessments. On February 19, 1991, the Court denied Castano's motion for a new trial. On January 13, 1992, the Second Circuit affirmed the conviction by summary order. *See United States v. Castano*, 956 F.2d 1159 (2d Cir.1992).[1]

On April 27, 1993, Castano filed the instant petition. Castano argues that the Court should have considered the one kilogram of cocaine actually distributed to calculate his base offense level, rather than the two kilograms *negotiated*, because *delivery of the full negotiated amount was not* "reasonably foreseeable." Castano also argues that the Court improperly denied him a two level reduction for acceptance of responsibility because he failed to plead guilty, thereby punishing the exercise of his constitutional right.[2]

1. On appeal, Castano argued that the Court failed to properly charge the jury regarding reasonable doubt and that the government failed to disclose impeachment evidence. *See United States v. Castano*, 956 F.2d 1159 (2d Cir.1992).

2. In this opinion, the Court refers to the Guidelines and policy statements in effect at the time of sentencing. *See United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991) (citation omitted).

## DISCUSSION

Under section 2255, a federal prisoner must establish that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255. It is well-settled that non-constitutional or non-jurisdictional claims, if not raised on direct appeal, are procedurally barred on collateral attack unless "the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley*, —— U.S. ——, ——, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976) (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

■ In this case, Castano did not raise the claims set forth in the instant petition on direct appeal. Because the alleged misapplication of the Guidelines is neither constitutional nor jurisdictional in nature, *see Park v. United States*, 1993 WL 50938, at *1 (S.D.N.Y.1993); *Ramos v. United States*, 1992 WL 350745, at *1 (S.D.N.Y.1992); *Fajardo v. United States*, 1992 WL 328933, at *2 (E.D.N.Y.1992), and because it does not constitute a fundamental defect which resulted in a complete miscarriage of justice, *see Park*, 1993 WL 50938, at *1; *Ramos*, 1992 WL 350745, at *1; *Fajardo*, 1992 WL 328933, at *2, the instant petition must be dismissed.[3]

■ In any event, there is no merit to Castano's claims. In view of the evidence

3. It is also well-settled that the failure to raise even constitutional claims on direct appeal "is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992). In this case, Castano has failed to set forth any basis for his procedural default.

and all of the reasonable inferences to be drawn therefrom, the government proved that the co-conspirators, including Castano, agreed to sell two kilograms to Hernandez, *i.e.,* that they intended to sell that quantity and that they were reasonably capable of doing so. *See United States v. Hendrickson,* 26 F.3d 321, 332–37 (2d Cir.1994). Accordingly, the Court properly set Castano's base offense level based upon the two kilograms negotiated. *See Hendrickson,* 26 F.3d at 333–34; *United States v. Negron,* 967 F.2d 68, 72 (2d Cir.1992); *see also United States v. Pimentel,* 932 F.2d 1029, 1031–32 (2d Cir. 1991) (holding that two kilograms negotiated set base offense level, rather than one kilogram delivered).

■ Castano's claim concerning his acceptance of responsibility is also without merit. Under § 3E1.1 of the Guidelines, a sentencing court may award a two level reduction for a defendant who "clearly demonstrates ... acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a) (1989). Under the earlier commentary, applicable at the time of sentencing, it was clear that a finding of acceptance of responsibility was not precluded merely because a defendant exercised his constitutional right to a trial. U.S.S.G. § 3E1.1(b) (1989) comm., n. 2; *see also United States v. Castano,* 999 F.2d 615, 617 (2d Cir.1993) (discussing more stringent amended commentary).[4]

In making a determination under § 3E1.1, a sentencing court must consider, *inter alia,* voluntary termination of criminal conduct, post-offense rehabilitative efforts and timeliness of acceptance of responsibility. *United States v. Harris,* 38 F.3d 95, 98 (2d Cir.1994) (citing U.S.S.G. § 3E1.1 comm., n. 1). Where, as here, a defendant fails to plead guilty, the applicable commentary indicates that a two level reduction may be available "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1 comm., n. 2. In this case,

Castano challenged neither the constitutionality nor applicability of the pertinent criminal statute. Moreover, Castano failed to demonstrate his acceptance of responsibility at the pre-trial stage, at the trial itself or even at post-conviction sentencing.

Instead, Castano argues that § 3E1.1 violates his constitutional right to plead not guilty. In *United States v. Parker,* 903 F.2d 91 (2d Cir.1990), the Second Circuit rejected this same argument. In *Parker,* a defendant challenged the constitutionality of § 3E1.1 by arguing that the provision penalized him for maintaining his innocence. *Id.* at 105. Relying upon *Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471–72, 25 L.Ed.2d 747 (1970), the court held that "the availability of a sentence reduction to one who clearly admits personal responsibility ... is [not] the equivalent of an increase in sentence for one who does not." *Id.* at 105. Accordingly, because the possibility of leniency should not be equated with impermissible punishment, this argument must be rejected.

### CONCLUSION

For the reasons set forth above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**

---

**4.** A sentencing court's factual determination regarding acceptance of responsibility "is entitled to great deference on review." U.S.S.G. § 3E1.1 comm., n. 5; *see also United States v. Austin,* 17 F.3d 27, 30 (2d Cir.1994).